IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STACIE GROFF, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>UNIFIED SCHOOL DISTRICT )<br>NO. 503, )<br>Serve: Superintendent )<br>Lori Ray )<br>2900 Southern )<br>Parsons, Kansas, 67357, )<br>)<br>    Defendant. ) | Case No.:<br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DISABILITY DISCRIMINATION, HARASSMENT & RETALIATION IN VIOLATION OF THE ADA AND THE ADAAA**

**COMES NOW** Plaintiff Stacie Groff and for her cause of action against Unified School District No. 503, and states as follows:

**PARTIES**

1. Stacie Groff ("Ms. Groff" or "Plaintiff") resides at 1420 S. 14th Street, Parsons, Kansas 67357. She is a current employee of Defendant Unified School District No. 503.

2. Unified School District No. 503 ("District" or "Defendant") is a public-school district located in Parsons, Kansas.

3. The District is an employer within the meaning of the Americans with Disabilities Act ("ADA") and the ADA Amendments Act ("ADAAA") because it has at least fifteen ("15") employees.

1

**JURISDICTION & VENUE**

4. Ms. Groff's Complaint against the District is brought pursuant to the ADA and the ADAAA based on the discriminatory, harassing and retaliatory conduct of Defendant's administrators, managers, and employees and the failure of the District to properly investigate, address and remedy illegal disability discrimination, harassment and retaliation in the workplace. As such, this Court has original jurisdiction over Ms. Groff's claims pursuant to 28 U.S.C. § 1331.

5. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because the District is located within the District of Kansas and a substantial part of the unlawful conduct giving rise to Ms. Groff's claims occurred in this District.

6. On or about May 15, 2018, Ms. Groff filed her initial Charge of Discrimination ("Charge") in a timely manner with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC") based on her disability discrimination, harassment and retaliation claims. The EEOC Charge number is 563-2018-01929. (A copy of the Charge is attached as **Ex. A**).

7. On or about October 30, 2018, the EEOC issued Ms. Groff her Right to Sue letter ("RTS"). This lawsuit is brought within ninety ("90") days of the RTS. (A copy of the RTS is attached as **Ex. B**).

8. All requisite conditions to this Court having jurisdiction over the District and Ms. Groff's claims are met.

**GENERAL ALLEGATIONS**

9. In or about October 2015, Ms. Groff was hired by the District to work as an Accounts Payable/Payroll Clerk in the District office.

10. The Accounts Payable/Payroll Clerk was a full-time, year-round position.

11. After Ms. Groff was hired, Linda Proehl, a former District Superintendent who had retired, returned to the District to work until a new Superintendent was found.

12. Ms. Proehl often made comments to the effect of, "What are they going to do, fire me," which led Ms. Groff to believe that Ms. Proehl did not think that her actions had consequences.

13. On or about September 9, 2017, Ms. Groff was diagnosed with multiple sclerosis ("MS"), which is a life - long neurological disease.

14. Ms. Groff's multiple sclerosis is a physical condition that substantially limits at least one or more life activities, including working.

15. Ms. Groff informed the District of that had been diagnosed with MS.

16. Shortly thereafter, Ms. Proehl asked Ms. Groff, "How are you doing?  Do you think you're going to be able to do this?"

17. Ms. Groff assured Ms. Proehl that her MS would not interfere with her ability to perform her duties.

18. On or about November 3, 2017, a school secretary wrote down the wrong information on her Certified Attendance Report.  The secretary reported that several teachers were absent due to professional development when in fact, the teachers were absent due to illness.

19. Ms. Proehl criticized Ms. Groff for relying on the secretary's inaccurate report and told Ms. Groff that going forward, her work had to completely "perfect."

20. On or about November 8, 2017, Ms. Groff had an appointment with her neurologist.

21. The following day, Ms. Groff told Ms. Proehl that, although her MS symptoms were permanent, but with a good diet and exercise, some of her strength might return.

22. Ms. Groff also told Ms. Proehl that the neurologist's treatment plan included a medical procedure and medication.

23. Ms. Proehl questioned Ms. Groff for a second time as to whether Ms. Groff could work.

24. Ms. Groff answered "yes" to which Ms. Proehl said something to the effect that she had to look out for the District.

25. Ms. Proehl reminded Ms. Groff that her work had to be "perfect."

26. Ms. Proehl also threatened Ms. Groff's job and warned that if Ms. Groff started making mistakes that she would have to let her go.

27. Ms. Proehl also suggested that Ms. Groff accept a different position within the District, even if it meant a pay cut and that maybe Ms. Groff could work less.

28. Ms. Proehl told Ms. Groff that it was not "urgent" for her to make a decision, but this was something that Ms. Groff must consider within the next few months.

29. On or about November 10, 2017, Tonya Phillips, the District's Business Manager, asked Ms. Groff to search for a purchase order that was not found during an audit.

30. Ms. Groff spent the entire day searching for the purchase order only to learn that Ms. Phillips had miscommunicated what Ms. Groff was supposed to be looking for.

31. Mr. Proehl blamed Ms. Groff for making the District look bad in the audit and also indicated that it looked like Ms. Groff stole from the District because the missing purchase order stemmed from a purchase on Ms. Groff's Visa.

32. On or about November 13, 2018, Ms. Proehl criticized Ms. Groff because she finished classified payroll later than usual.

33. The delay was not Ms. Groff's fault because she had spent the previous Friday looking for the wrong documentation due to the communication error by Ms. Phillips. Further, Ms. Groff cannot complete payroll until all of the school secretaries provide her with attendance documentation and several of the secretaries were late in sending the information to Ms. Groff.

34. On or about November 15, 2017, Ms. Groff complained to Ms. Phillips that she felt like Ms. Proehl was unfairly criticizing her work and singling her out due to her MS.

35. Ms. Phillips told Ms. Groff that Ms. Proehl had told her and several other office employees to let Ms. Proehl know if they uncovered any errors that could be attributed to Ms. Groff.

36. On or about December 6, 2017, Ms. Proehl summoned Ms. Groff to a meeting and accused Ms. Groff of spending too much time on the internet and said that all trust was gone.

37. Ms. Proehl told Ms. Groff that she would fire her on the spot if it were not for the fact that it was almost Christmas and she knew Ms. Groff needed her insurance for her MS.

38. Ms. Groff explained to Ms. Proehl that any internet shopping she did during work hours was done during a time when Ms. Groff was on hold while making a telephone call that she was asked to do.

39. Ms. Proehl wrote Ms. Groff up and sent her home without pay.

40. Others in the District used the internet for holiday shopping during work hours.

41. Kathy Hardman announced to everyone in the office (including Ms. Proehl) that she had purchased underwear at Duluth Trading for her husband.

42. Later, Ms. Hardman complained that Miranda Grant, another District employee, received a gift card from Duluth Trading after their online orders were delayed. Ms. Grant and Ms. Hardman had placed their online orders from work at the same time.

43. On or about December 7, 2017, Ms. Proehl came into Ms. Groff's office and questioned her commitment to the District.

44. On or about December 15, 2017, Ms. Proehl came into Ms. Groff's office and asked if anyone had called about their pay checks.

45. After Ms. Groff answered "no," Ms. Proehl said, "Hmm . . . I guess no one has looked at their check."

46. On January 12, 2018, Ms. Phillips offered to take Ms. Groff's deposits to the bank with hers.

47. Ms. Phillips told Ms. Groff that before she left for the bank, Ms. Proehl came into her office and saw Ms. Groff's deposit.

48. Ms. Proehl told Ms. Phillips that she would take Ms. Groff's deposits to the bank.

49. Ms. Proehl did not take Ms. Groff's deposits to the bank for the stated reason that she left the office at 5:30 p.m. and could not get there in time.

50. The bank is only a five - minute drive away and closes at 6:00 p.m.

51. On or about January 16, 2018, Ms. Proehl wrote Ms. Groff up for not making her deposits on January 12, 2018.

52. On or about February 28, 2018, Ms. Groff was diagnosed with breast cancer.

53. Ms. Groff told Ms. Proehl that she was diagnosed with breast cancer and needed a double mastectomy.

54. On or about March 21, 2018, Ms. Proehl accused Ms. Groff of making an error on a substitute teacher's pay check.

55. The error was such that it should have been caught by the payroll system and Ms. Phillips.

56. For whatever reason, the error was not discovered and the incorrect check was cancelled and a new check was issued to the substitute teacher.

57. On or about March 22, 2018, Ms. Groff underwent a double mastectomy.

58. Ms. Groff was off work for three weeks following her double mastectomy and was only supposed to return to work for half days for a specified period.

59. The District knew that Ms. Groff qualified for and needed leave pursuant to the Family Medical Leave Act ("FMLA").

60. On or about April 11, 2018 (the day before Ms. Groff was supposed to return to work), Ms. Proehl texted her and summoned her to a meeting scheduled the following day.

61. When Ms. Groff reported to work the following day, Ms. Proehl told her that she had packed all of Ms. Groff's personal items and wanted the building key. Ms. Proehl also told Ms. Groff that her name had been taken off the District's bank accounts and she no longer had access to the accounting system or her email account.

62. Ms. Proehl demanded that Ms. Groff sign a resignation letter or she would demote Ms. Groff to an aide position.

63. Ms. Groff told Ms. Proehl that she needed some time to make an informed decision.

64. On or about April 20, 2018, Ms. Groff's legal counsel faxed a letter of representation to the District which accused the District of violating the FMLA and the ADAAA.

65. On or about April 24, 2018, the District returned Ms. Groff to work, but placed her in an aide position at Garfield Elementary. Ms. Groff supervised a second - grade classroom filled with children who had numerous behavioral issues.

66. The aide position pays considerably less and is not a year-round position.

67. On or about April 28, 2018, the District finally notified Ms. Groff of her eligibility for FMLA.

68. Ms. Groff continues to work in the aide position.

## COUNT I – DISABILITY DISCRIMINATION & HARASSMENT IN VIOLATION OF THE ADA & THE ADAAA

69. Ms. Groff reasserts and re-alleges the allegations set forth in paragraphs 1 through 69 as if fully set forth herein.

70. The acts described above constitute disability discrimination and harassment in violation of the ADA, and the ADAAA.

71. Ms. Groff has MS and breast cancer, two diseases that substantially limit one major life activity, including working.

72. Ms. Groff was disabled within the meaning of the ADA and the ADAAA.

73. Ms. Groff could successfully perform the essential duties of her Accounts Payable/Payroll Clerk position with or without reasonable accommodation.

74. The District harassed Ms. Groff after it learned that she suffered from MS and breast cancer by questioning her as to whether she could still perform her job duties, more closely scrutinizing her work, singling her out for discipline, writing her up, sending her home without pay and demoting her to an aide position.

75. Ms. Groff suffered great emotional upset due to the fact that she was harassed because she had a disability. She was angry, upset, frequently stressed, lost sleep and was constantly worried about she and her husband might support their family without her income and benefits.

76. The District's harassment of Ms. Groff and demoting her to an aide because she was disabled was intentional and done with malice and/or a reckless indifference to the protected rights of Ms. Groff.

**WHEREFORE**, Plaintiff prays for judgment against Defendant on Count I of her Complaint, for a finding that she has been subjected to unlawful disability discrimination and harassment prohibited by the ADA the ADAAA; for an award of back pay, including fringe benefits, bonuses, cost of living increases and other benefits; for interest; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorneys' fees and expert fees and expenses; and for such other relief as the Court deems just and proper.

### COUNT II – RETALIATION IN VIOLATION OF THE ADA & THE ADAAA

77. Ms. Groff reasserts and re-alleges the allegations set forth in paragraphs 1 through 77 as if fully set forth herein.

78. The acts described above constitute retaliation in violation of the ADA, and the ADAAA.

79. Ms. Groff engaged in protected activity when she complained to Ms. Phillips, the Office Manager, that Ms. Proehl was harassing her because of her disabilities. She also engaged in a protected activity when she requested to work part-time after her double mastectomy.

80. After Ms. Groff engaged in protected activity, she was subjected to numerous adverse employment actions including, but not limited to, having her work scrutinized more closely, being written up, being sent home without pay, and being demoted.

81. There is a causal connection between Ms. Groff's protected activity and the adverse actions that followed.

82. Ms. Groff suffered great emotional upset due to the fact that she was retaliated against after she engaged in protected activity. She was angry, upset, frequently stressed, lost sleep and was constantly worried about she and her husband might support their family without her income and benefits.

83. The District's act of retaliating against Ms. Groff because she engaged in protected activity was intentional and done with malice and/or a reckless indifference to the protected rights of Ms. Groff.

**WHEREFORE**, Plaintiff prays for judgment against Defendant on Count II of her Complaint, for a finding that she has been subjected to unlawful retaliation prohibited by the ADA the ADAAA; for an award of back pay, including fringe benefits, bonuses, cost of living increases and other benefits; for interest; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorneys' fees and expert fees and expenses; and for such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues triable to a jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place for trial.

Respectfully Submitted,

**WILLIAMS DIRKS DAMERON LLC**

/s/ Michael A. Williams
Michael A. Williams, KS Bar No. 19124
1100 Main Street, Suite 2600
Kansas City, MO 64105
mwilliams@williamsdirks.com
(o) 816-945-7110
(f) 816-945-7118
**Attorney for Plaintiff**

10